```
IN THE UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF TEXAS
         FORT WORTH DIVISION

LIDA T. MOSIMAN              §
                             §
VS.                          §  CIVIL ACTION NO. 4:10-CV-794-Y
                             §
STEPHEN ANTHONY WARREN       §
```

ORDER AFFIRMING THE
JUDGMENT OF THE BANKRUPTCY COURT

On June 28, 2010, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division ("the bankruptcy court") determined that *pro-se* debtor Stephen Warren's debt to creditor Lida T. Mosiman was dischargeable in bankruptcy. The bankruptcy court entered judgment to that effect on July 10 and then denied Mosiman's request for reconsideration on August 9. Now before the Court is Mosiman's appeal of those decisions. After review, the Court concludes that Warren's debt to Mosiman is dischargeable and, therefore, will affirm the judgment of the bankruptcy court.

I.  Background

Over the course of several years, Mosiman made a number of personal loans to Warren totaling approximately $500,000. (R. at 291-92.) The purpose of the loans was to help Warren pay the attorneys' fees and costs associated with his divorce and custody proceedings and to pay the medical expenses of one of his daughters. (R. at 285, 304.) According to Mosiman's second

amended complaint, Mosiman extended the loans in response to Warren's representations that he intended to repay the debt, that he would give Mosiman a portion of each check he received until he repaid the debt in full, and that he needed custody of his children because his former father-in-law was molesting one of his daughters. (R. at 42-43.) In addition to the representations in the complaint, Mosiman sought to prove at trial a number of other alleged representations regarding the welfare of his daughters and his intentions of repayment. (R. at 289-304.) Mosiman contends that Warren made the representations with knowledge or at least recklessness as to their falsity and with no intention of ever repaying Mosiman. (R. at 42.) Mosiman further contends that she relied upon those representations in making the loans and that she anticipated repayment from Warren based on her knowledge of Warren's prior earning capacity. (R. at 42-43.) Throughout this time, however, Warren was unemployed and plagued with difficulty in obtaining work. (R. at 296-97.)

Based on these allegations, Mosiman argued before the bankruptcy court that Warren's debt should be nondischargeable under 11 U.S.C.A. § 523(a)(2)(A) (West 2011) on grounds that the loan was obtained by false pretenses, a false representation, and actual fraud.[1] (R. at 10-11.) The bankruptcy court rejected this

---

[1] "Section 523(a)(2)(A) provides that a debt is non-dischargeable if it is 'for money, property, services, or an extension, renewal, or refinancing of credit,' to the extent that it was 'obtained by false pretenses, a false representation, or actual fraud.'" *In re Dorsey*, 505 F.3d 395, 399 (5th Cir.

2

contention, noting that Warren's promises to repay Mosiman could not constitute false pretenses or a false representation because they did not describe past or current facts. (R. at 15.) Moreover, the bankruptcy court found that Warren intended to repay Mosiman and, thus, his promises to repay could not constitute actual fraud either. (R. at 16.) In any event, the bankruptcy court determined that Mosiman's reliance on Warren's promises to repay was not justifiable in light of the circumstances known to Mosiman when she made the loans. (R. at 17.) Furthermore, with regard to Warren's representations as to the welfare of his daughters, the bankruptcy court determined that the representations were either shown to be true, believed by Warren to be true when he made them, or simply not shown by Mosiman to be false.[2] (R. at 20-22.) In light of those findings, the bankruptcy court determined that the debt was dischargeable. (R. at 22.) Mosiman, thereafter, initiated the instant appeal.[3]

II. Standard of Review

---

2007) (quoting 11 U.S.C. § 523(a)(2)(A)).

[2] Noting that exceptions to discharge are to be construed narrowly, the bankruptcy court also indicated that it was "necessarily hesitant to deny discharge of the debt to Mosiman based on the statements regarding Warren's ex-wife, daughters, and father-in-law" because those statements are "tangential to the financial transaction" and "are not typical of the types of representations usually at the center of dischargeability complaints under section 523(a)(2)(A)." (R. at 17-18.) But because Mosiman's appeal does not address these remarks, there is no need for the Court to do so.

[3] Warren did not file an appellee brief.

3

The Court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. *In re Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010).

III. Discussion

On appeal, Mosiman makes essentially three arguments.[4] First, Mosiman contends that the answer Warren filed in response to Mosiman's second amended complaint was inadequate to deny the allegations in the complaint and, therefore, pursuant to Rule 8(b)(6), the bankruptcy court should have treated the allegations in the second amended complaint as admitted. Second, Mosiman contends that a statement made with reckless disregard as to its truth can be fraudulent and, thus, the bankruptcy court erred when it held that some of Warren's representations were not fraudulent simply because Warren thought they were true. Third, Mosiman contends that the bankruptcy court's factual findings as to which of Warren's alleged representations were actually made are clearly erroneous.

"In responding to a pleading, a party must: (A) state in short

---

[4] Mosiman's brief actually designates six points of error. (Appellant's Br. 2-3.) However, these points overlap considerably. Furthermore, two of them are labeled "factual issues" when, in actuality, they are legal questions: (1) "Did the Bankruptcy Court err in refusing to declare the debt owed by Mr. Warren to creditor Ms. Mosiman nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code?" and "Are the Bankruptcy Court's findings of fact clearly erroneous that none of Mr. Warren's representations to Ms. Mosiman amount to actual fraud?" (*Id.* at 3.) In the Court's view, the essence of Mosiman's arguments can be addressed more accurately and efficiently as three consolidated arguments.

and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). "If the defendant wishes to controvert each and every averment in the complaint, Federal Rule 8(b) permits him to do so by a general denial." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1265 (3d ed. 2004). And "any statement making it clear that the defendant intends to put in issue all of the averments in the opposing party's pleading is sufficient." *Id.* However, "[t]he rule expressly stipulates that a party may not use this form of denial unless the pleader intends to controvert the entire complaint including the averment of the grounds upon which the court's jurisdiction depends." *Id.*

After review, the Court agrees with Mosiman that the bankruptcy court erred in determining that Warren's answer was adequate as a general denial under Rule 8(b). Warren's answer consists merely of the following six lines:

REPONSE [sic] TO ADVERSARY PROCEEDING

Opposed Complaint Discharge ability per (11 U.S.C. 523)

1. Lida Mosiman Testimony under oath
2. Lida Mosiman: Written Affidavits (notary)
3. Lawyer Conflict
4. Factual Allegation: (false)

(R. at 47.) Even assuming this language is sufficient to communicate an intention to deny Mosiman's allegations of liability, Warren's answer fails as a general denial because he

5

could not have, in good faith, challenged Mosiman's allegations concerning jurisdiction. While the bankruptcy court correctly noted that *pro-se* pleadings are to be construed liberally, Rule 8(b)(3) expressly states that a general denial is only available to a "party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds." Fed R. Civ. P. 8(b)(3). Because of this requirement, "situations in which the complaint can be completely controverted are quite rare." Wright & Miller, *supra*, § 1265. Thus, considering both that Warren could not have made a good-faith denial of the jurisdictional facts in Mosiman's second amended complaint and that the language used is so primitive and imprecise, Warren's answer fails as a general denial and Rule 8(b)(6) demands that the allegations in the second amended complaint be deemed admitted.

Nevertheless, even with the complaint's allegations in the record, the bankruptcy court's ultimate conclusion as to dischargeability remains correct. "For a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show . . . that the creditor actually **and justifiably** relied on the representation." *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005) (emphasis added) (citing *In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2005)).[5] "Justifiable reliance is an intermediate level of

---

[5] The Fifth Circuit has "applied different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation." *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001) (citations omitted). Additionally, the Fifth Circuit has noted that, in *Field*

reliance. It is less than reasonable reliance, but more than mere reliance in fact." *Moss v. Littleton*, No. 3:01-CV-2260-L, 2002 WL 31156405, at *3 n.2 (N.D. Tex. Sept. 26, 2002) (citing *Field v. Mans*, 516 U.S. 59, 73 (1995)). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field*, 516 U.S. at 71. The party relying on the representation is "required to use his senses." *Id.*

It is evident from the record that Mosiman has failed to show that her reliance on Warren's statements was justified.[6] Mosiman knew that Warren was emotionally volatile during his divorce and custody proceedings. (R. at 284, 292-299.) And regardless of

---

*v. Mans*, the Supreme Court did not explicitly decide the issue of what degree of reliance is necessary to prove a claim for false pretenses or for false representation when it determined that justifiable reliance is the standard in claims for actual fraud. *Id.* at 402 (citing *Field v. Mans*, 516 U.S. 59, 71 n.8 (1995)). Recently, however, the Fifth Circuit has stated in general terms that claims under 523(a)(2)(A) require a showing of justifiable reliance and did not differentiate between actual fraud claims and claims based on false pretenses or false representations. *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005). That case, along with the fact that the Supreme Court in *Field* observed that it did "not mean to suggest that the requisite level of reliance would differ if there should be a case of false pretense or representation but not of fraud," leads the Court to conclude that justifiable reliance is required of all claims under 523(a)(2)(A). *Field*, 516 U.S. at 71 n.8. Further, many lower courts within the Fifth Circuit appear to have taken this position. *See, e.g.*, *Moss v. Littleton*, 3:01-CV-2260-L, 2002 WL 31156405, at *3 (N.D. Tex. Sept. 26, 2002) ("The character of reliance a creditor must prove under § 523(a)(2)(A) is 'justifiable' reliance."); *In re Metcalf*, Bankr. No. 05-34150-SGJ-72006, WL 2883284, at *5 (Bankr. N.D. Tex. Oct. 6, 2006) ("In evaluating a cause of action under Section 523(a)(2)(A), whether it is a question of false pretenses or of false representation or of actual fraud, the court must determine that the plaintiff justifiably relied upon the representations made to her by the defendant.").

[6] Indeed, on appeal, Mosiman does not even contest the bankruptcy court's determination that she failed to show she justifiably relied on Warren's promises of repayment.

Warren's prior earning capacity, Mosiman knew when she made the loans that Warren was unemployed and having difficulty obtaining work. At trial, Mosiman's counsel asked her if, during the period of time surrounding of the loans, she had "known [Warren] to actually have a job," and Mosiman replied that she had not. (R. at 297.) Mosiman also stated at trial that Warren "had told [her] he was looking for jobs but he couldn't get any." (R. at 297.) Given this knowledge, Mosiman's reliance is difficult to justify for purposes of § 523(a)(1)(A). Thus, even treating the facts in the second amended complaint as established, Mosiman has not met her burden of demonstrating how lending $500,000 in anticipation of repayment to an emotionally-distraught, unemployed person such as Warren is justified.

Furthermore, because Mosiman has failed to establish that her reliance on Warren's representations was justified, Mosiman's remaining two arguments are moot. That is, even assuming that the bankruptcy court's factual findings concerning what representations were actually made by Warren are clearly erroneous, Mosiman still cannot prevail without proving that she justifiably relied on the representations. Likewise, even if the bankruptcy court erred in concluding that Warren's statements were not fraudulent because he believed them to be true, Mosiman's appeal nevertheless fails because she has not shown that her reliance on those fraudulent representations was justified. Consequently, § 523(a)(2)(A) provides no recourse for Mosiman regardless of whether she is

correct on her latter two arguments.

IV. Conclusion

In light of the foregoing, the Court concludes that Warren's debt to Mosiman falls outside the scope of § 523(a)(1)(A) and, therefore, is dischargeable in bankruptcy. Accordingly, the judgment of the bankruptcy court is AFFIRMED.

SIGNED January 28, 2011.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE